1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jonquil THOMAS-WEISNER,<br><br>                                    Plaintiff,<br><br>v.<br><br>Connie GIPSON, *et al.*,<br><br>                                    Defendants. | Case No.:  19-cv-01999-JAH-BGS<br><br>**REPORT & RECOMMENDATION GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>[ECF No. 16] |

Jonquil Thomas-Weisner ("Plaintiff"), currently incarcerated at Centinela State Prison ("CEN") located in Imperial, California, is proceeding pro se and in forma pauperis ("IFP") in this civil rights action filed pursuant to 42 U.S.C. § 1983. (*See* ECF No. 5.)  In the First Amended Complaint ("FAC"), Plaintiff alleged that Defendants violated the First Amendment's Free Exercise Clause and the Fourteenth Amendment's Protection of Religious Clause by removing him from his Religious Meat Alternative ("RMA") diet after an alleged violation without providing an initial warning before removal.  (ECF No. 15.) Defendant Patrick Covello and Defendant Lance Eshelman ("Defendants") moved to dismiss Plaintiff's First Amended Complaint ("FAC") contending: (1) Plaintiff failed to state cause of action under the First Amendment's Free Exercise Clause, (2) Plaintiff failed to state cause of action under the Fourteenth Amendment, (3) Plaintiff's request for injunctive relief should be dismissed because he no longer resides at RJD, and (4)

1

Defendants are entitled to Qualified Immunity.  (ECF No. 16 at 5–9.)  Plaintiff filed an opposition to the motion to the dismiss ("Opposition") and Defendants' filed a reply in support of their motion.  (ECF Nos. 18, 19.)

This Report and Recommendation is submitted to United States District Judge John A. Houston pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.  Based on the documents and evidence presented, and for the reasons set forth below, the Court **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's FAC (ECF No. 16) be **GRANTED** and that this action be **DISMISSED**.

## I.  FACTUAL BACKGROUND

Plaintiff participated in the RMA diet while incarcerated at California Substance Abuse Treatment Facility (SATF) until he was transferred to RJD on January 5, 2018.  (ECF No. 15 at 1.)  Once he arrived at RJD, Plaintiff claimed that he took the necessary steps to obtain his RMA diet at this new prison to no avail.  (*Id.*)  Plaintiff alleged that at the time of the complaint, Defendant Covello was acting Warden of RJD and member of the Religious Review Committee ("RRC").  (*Id.* at 1–2.)  Plaintiff also alleged that Defendant Eshelman was Community Resource Manager at RJD and also a member of the RRC.  (*Id.*)  Plaintiff alleged that the Defendants are responsible for "the upkeep of transferring inmates religious diet" and to "inform an inmate of any violation before their removal" from their diet, since they are members of the RRC.  (*Id.* at 2.)

By June 2018, Plaintiff indicated that he had yet to receive his RMA diet and raised the issue via "CDCR Form-602" grievance.  (*Id.* at 2.)  On June 11, 2018, Plaintiff claimed to have received a "CDCR Form-3030" with "DENIED" written across it and without further explanation.  (*Id.* at 3.)  Plaintiff then indicated that he began the CDCR grievance process.  (*Id.*)  At the Second Level Response ("SLR"), Plaintiff alleged that Defendant Covello responded to his grievance.  (*Id.*)  As for not receiving an initial warning, Plaintiff stated that Defendant Covello indicated in his SLR that:

> 2) you have not received a 128b (CDCR-128b Chrono) notifying you of your violations as stated in the 3030 Religious Diet Agreement ... preview of your file was conducted to see if you had any previous approvals for requested diet ... The review turned up negative results, so your request was treated as a new request. Therefore, a review of your canteen purchases was conducted, which revealed you were purchasing items not consistent with the diet requested, ... So a 128b notifying you of your violations was deemed unnecessary.

(*Id.* at 3.)  Plaintiff filed his FAC against the Defendants for their alleged participation in the removal of Plaintiff from the RMA diet at RJD without first warning him.  (*Id.* at 1–2.) Plaintiff claimed that this hindered his full and safe participation of his religion, which violated the First and Fourteenth Amendment.  (*Id.* at 2.)

## II. PROCEDURAL BACKGROUND

On October 17, 2019, Plaintiff initially filed this action pursuant to 42 U.S.C. § 1983 and also filed a Motion to Proceed IFP.  (*See* ECF Nos. 1, 2.)  On January 8, 2020, the Court granted Plaintiff's Motion to Proceed IFP and dismissed Defendants Gipson and Voong for failing to state a claim upon which relief could be granted pursuant to 28 U.S.C. §§ 1915 (e)(2(b)(ii), 1915A(b)(1).  (*See* ECF No. 5.)  However, the Court found that the allegations in Plaintiff's Complaint as to his First Amendment Free Exercise Clause and Religious Land Use and Institutionalized Persons Act ("RLUIPA") claims were "sufficient to survive the 'low threshold' set for sua sponte screening pursuant to 28 U.S.C. § 1915 (e)(2(b)(ii) and § 1915A(b)(1).  (*Id.* at 8–9.)  Thus, the Court directed the United States Marshal Service to effect service of the remaining claims in Plaintiff's Complaint on Defendants Covello and Eshelman.  (*See id.*)

On May 11, 2020, Defendants filed their Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  (ECF No. 10.)  Plaintiff filed his Opposition to Defendant's Motion, to which Defendant filed a Reply.  (*See* ECF Nos. 12, 13.)

On October 26, 2020, the Court issued its order granting Defendants' Motion to Dismiss Plaintiff's Complaint.  (ECF No. 14.)  As for Plaintiff's First Amendment Free Exercise Claim, the Court pointed out that the Defendants could not be held liable due to their supervisory roles since there is no *respondeat superior* liability under § 1983.  (*Id.* at

6.)  The Court then indicated that in order for Plaintiff to state a claim against either Defendant, he must allege their "'personal involvement in the constitutional deprivation'" or "'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"  (*Id.*)  In response to Plaintiff's claim in his opposition that the Defendants were members of the RRC and therefore should have known that Plaintiff was denied the right to participate in the RMA diet, the Court indicated that the inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant.  (*Id.* at 7.)  The Court detailed that a person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff] complains]."  (*Id.*)  The Court then granted Defendants' Motion to Dismiss as to Plaintiff's First Amendment claim, finding that the complaint did not contain allegations that Defendants were members of the RRC and did not contain allegations that Defendants played any direct role in the decision to deny or remove Plaintiff from the RMA.  (*Id.* at 7–8.)

As for Due Process under the Fourteenth Amendment, the Court indicated that the Defendants' purported failure to comply with § 3054.5 of the CDCR guidelines did not necessarily amount to a Fourteenth Amendment Due Process violation in a § 1983 action. (*Id.* at 8–9.)  The Court stated that Due Process is violated only when there are changes that inflict an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  (*Id.*)  The Court indicated that Plaintiff failed to allege any changes to his diet were a "dramatic departure from the basic conditions" of his confinement that would give rise to a liberty interest and then granted Defendants' Motion to Dismiss.  (*Id.*)

The Court then granted Defendants' Motion to Dismiss as to Plaintiff's RLUIPA claims.  (*Id.* at 9–10.)  The Court found that Plaintiff's claims for monetary damages and injunctive relief against Defendants in both their individual and official capacities for

RLUIPA violations could not proceed and dismissed the RLUIPA claims without leave to amend.  (*Id.*)

The Court did not address Qualified Immunity since the Court found that Plaintiff failed to state a claim against the Defendants, however, the Court granted Plaintiff leave to amend to cure the deficiencies in his claims against Defendants, with the exception of his RLUIPA claim.  (*Id.* at 10–11.)  The Court warned that Plaintiff's FAC must be complete in itself, without reference to Plaintiff's original pleading, and any claims Plaintiff fails to reallege against any of the Defendants will be considered waived.  (*Id.*)

### III.   MOTION TO DISMISS STANDARD

A motion to dismiss under Federal Rule 12(b)(6) may be based on either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."  *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citing Fed. R. Civ. P. 8(a)(2)).  A motion to dismiss should be granted if the plaintiff or petitioner fails to proffer "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a Federal Rule 12(b)(6) motion to dismiss, the Court must "accept all allegations of material fact in the complaint as true and construe them in the light most favorable to the non-moving party."  *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters*, 497 F.3d 972, 975 (9th Cir. 2007).  However, it is not necessary for the Court "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "[T]hreadbare recitals" of the elements of a cause of action, "supported by mere conclusory statements," are not enough.  *Iqbal*, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  On the other hand, "[a] document filed pro se is 'to be liberally construed,' and 'a

pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## IV.   DISCUSSION

In the FAC, Plaintiff alleged that the Defendants violated the First Amendment and Fourteenth Amendment for their alleged actions regarding his RMA diet.  (ECF No. 15 at 2–3.)  Defendants moved to dismiss Plaintiff's FAC in its entirety on the grounds that (1) the conduct attributed to the Defendants are not sufficient to maintain a lawsuit under § 1983, (2) Plaintiff failed to state cause of action under the First Amendment's Free Exercise Clause, (3) Plaintiff failed to state cause of action under the Fourteenth Amendment, (4) Plaintiff's request for injunctive relief should be dismissed because he no longer resides at RJD, and (5) Defendants are entitled to Qualified Immunity.  (ECF No. 16 at 5–9.)  Each of these arguments are addressed in turn.

### A. 42 U.S.C. §1983 Standard

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights."  *Conn v. Gabbert*, 526 U.S. 286, 290 (1999).  Section 1983 offers no substantive legal rights, but rather provides procedural protections for federal rights granted elsewhere.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  "Section 1983 is a 'vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials.'"  *Naffe v. Frey*, 789 F.3d 1030, 1035 (9th Cir. 2015) (quoting *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006)).  "To state a claim under § 1983, a plaintiff [1] must allege the violation of a right secured by the Constitution and laws of the United States, and [2] must show that the alleged deprivation was committed by a person acting under color of state law."  *Id.* at 1035–36 (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). "Dismissal of a § 1983 claim following a Rule 12(b)(6) motion is proper if the complaint is devoid of factual allegations that give rise to a plausible inference of either element."  *Id.* at 1036 (citing *DeGrassi v. City of Glendora*, 207 F.3d 636, 647 (9th Cir. 2000), *Price v. Hawaii*, 939 F.2d 702, 707–09 (9th Cir. 1991), and *Iqbal*, 556 U.S. at 678).

## B. First Amendment Free Exercise Claim

In his FAC, Plaintiff alleged that it was Defendants' duties, as members of the RRC, for keeping track of the religious diets of transferring inmates and warning the inmates of their first violation of their RMA diet before removal.  (ECF No. 15 at 1–2.)  Plaintiff further alleged that Defendants' participation in removing him from his RMA diet without a warning or the ability to continue on his diet "hindered his full and safe participation of his religion" and violated the First Amendment's Free Exercise Clause and Fourteenth Amendment "Protection of Religious" Clause.  (*Id.* at 2.)

Fundamentally, "where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims."  *See Pino v. Ladd*, No. 1:13CV01593-DLB-PC, 2014 WL 1102721, at *3 (E.D. Cal. Mar. 2014) (citing *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996)).  Thus, considering that Plaintiff alleged that the Defendants' conduct hindered his full and safe participation of his religion due to their alleged participation in removing Plaintiff from his RMA diet (ECF No. 15 at 2), Plaintiff's religion claim is properly analyzed under the First Amendment.  *See Pino*, 2014 WL 1102721, at *3 (finding that Plaintiff did not have a Fourteenth Amendment claim since his claim regarding his religious practice was properly analyzed under the First Amendment).

Inmates do retain the protections afforded to them under the First Amendment, including the free exercise of their religion, while incarcerated.  *See McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)).  Free exercise rights, however, are "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain security."  *Id.*  The protections of the Free Exercise Clause are triggered when prison officials burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith.  *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008).  The Ninth Circuit has held that inmates "have the right to

be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993).

However, since there is no *respondeat superior* liability under § 1983, Defendants cannot be held liable simply by virtue of their supervisory roles. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). In order for Plaintiff to have stated a claim against either Defendant, Plaintiff needed to have alleged their "'personal involvement in the constitutional deprivation'" or "'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (quoting *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

In its order dismissing the original complaint, the Court indicated that Plaintiff failed to allege that Defendants were members of the RRC and that the Defendants played any direct role in the decision to deny or remove Plaintiff from his RMA diet. (ECF No. 14 at 7.) The Court granted Plaintiff leave to amend to cure the deficiencies, specifically indicating that Plaintiff must plead in his FAC that each Defendant violated the Constitution through his own individual actions in order to plead a plausible claim for relief. (*Id.* at 7–8, 10–11.)

Defendants moved to dismiss Plaintiff's FAC, arguing that the conduct that Plaintiff attributed to the Defendants do not amount to a constitutional violation. (ECF No. 16 at 5.) Defendants claimed that Plaintiff failed to describe any conduct undertaken in the FAC that shows that the Defendants, through their own individual actions, violated the Constitution. (*Id.* at 5–6.) Further, Defendants argued that the act of denying a grievance, without more, cannot sustain a claim under 42 U.S.C. § 1983. (*Id.* at 6.) The Defendants stated that the Court previously held that the original complaint's allegations were not sufficient to state a § 1983 cause of cation and that Plaintiff has not corrected this defect. (*Id.*)

Plaintiff opposed, stating that his allegations in the FAC are sufficient for purposes of establishing liability under 42 U.S.C. § 1983 in showing that the Defendants violated his constitutional rights. (ECF No. 18 at 4.)  Plaintiff claimed that his RMA diet stopped once he transferred to RJD and that the Defendants, as members of the RRC, were responsible for transferring him to his RMA diet.  (*Id.* at 3.)  Plaintiff claimed that he was entitled to a written warning and continuance of the RMA diet under CCR §3045.5, since the non-compliant canteen purchase was his first violation.  (*Id.* at 4.)  Each Defendant is analyzed separately below.

### 1.  Defendant Covello

As to Defendant Covello's personal participation in removing him from his RMA Diet, Plaintiff alleged in his FAC that it was Defendant Covello's duty, as a member of the RRC, for keeping track of the religious diets of transferring inmates and warning the inmates of any violations regarding their RMA diet before removal.  (ECF No. 15 at 1–2.) Plaintiff also alleged that "Defendants' participation in the removal of Plaintiff from the RMA diet without first warning him has hindered his full and safe participation of his religion."  (*Id.*)  However, since an individual's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement, Plaintiff needed to have alleged facts, not simply conclusions, that showed that the Defendants was personally involved in the deprivation of his civil rights.  *See Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir.1998) (finding that plaintiff must allege facts showing that the defendant was personally involved in the deprivation of plaintiff's civil rights), *cert. denied,* 525 U.S. 1154 (1999); *Wesley v. Davis*, 333 F. Supp. 2d 888, 892 (C.D. Cal. 2004) (finding that a defendant's general responsibility for supervising prison operations is insufficient in establishing personal involvement).  In his FAC, Plaintiff has only made conclusory allegations that Defendant Covello participated in removing him from the RMA diet. Plaintiff did not individualize Defendant Covello's personal participation in the removal and in fact failed to describe the actual person that participated in depriving him of his

RMA diet.  Accordingly, Plaintiff has failed to proffer enough facts to state a claim as to Defendant Covello's personal involvement in the alleged First Amendment violation.

Further, Plaintiff failed to allege a sufficient causal connection between the Defendant Covello's conduct and the alleged First Amendment constitutional violation. *See Jones*, 297 F.3d at 934.  "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citing *Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976).)  A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff] complains]." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

The only specific conduct that Plaintiff attributed to Defendant Covello was his participation in the grievance process.  (*See* ECF No. 15.)  Plaintiff first alleged that his request for his RMA diet was denied without further explanation on June 11, 2018, but did not provide any allegations as to who actually denied this claim.  (*Id.* at 3.)  After this denial, Plaintiff claimed that he started the grievance process.  (*Id.*)  In response to this grievance, Defendant Covello responded in a SLR.  (*Id.*) Defendant Covello's SLR involved whether certain regulations applied to Plaintiff's religious meal violation to justify providing Plaintiff with a warning and continuing him on his RMA diet.  (*Id.*)  Plaintiff indicated that Defendant Covello's SLR decided that notice regarding Plaintiff's violations was found to be unnecessary.  (*Id.*)

Although Plaintiff tried to frame Defendant Covello's participation in the SLR as the conduct that deprived Plaintiff of his constitutional right protected under the First Amendment, Plaintiff failed to allege a sufficient causal connection between the Defendant Covello's conduct and the alleged First Amendment violation.  Defendant Covello's SLR to Plaintiff's grievance only dealt with whether Plaintiff should have been provided a warning and the ability to continue with his RMA diet following his first violation, pursuant

to state and prison regulations.  Inmates do not have a constitutional entitlement to a specific prison grievance procedure.  *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)).  And Plaintiff cannot state a § 1983 claim based solely on Defendant Covello's role in the inmate appeals process.  *See Revis v. Syerson*, No. 2:12-CV-2751-MCE-EFB, 2015 WL 641629, at *5 (E.D. Cal. Feb. 2015) ("[Defendant's] signing of the Second Level Response is insufficient personal participation."), *subsequently aff'd sub nom. Revis v. Roche*, 659 F. App'x 453 (9th Cir. 2016); *see also George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible. [. . .] Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."); *Cejas v. Myers*, No. 112CV00271-AWI-DLB, 2016 WL 1695060, at *7 (E.D. Cal. Apr. 2016) (finding that a defendant who reviewed an appeal did not personally participate in the constitutional violation since the Defendant did not have any reason to believe Plaintiff's constitutional rights had been violated after the Defendant reviewed the previous appeal decisions and had no reason to think that a constitutional violation had occurred); *Lopez v. Peterson*, No. 2:98-CV-2111-LKK-EFB, 2013 WL 3994466, at *16 (E.D. Cal. Aug. 2013) ("[T]he prison grievance procedure does not confer any substantive rights upon inmates and actions in reviewing and denying inmate appeals cannot serve as a basis for liability under section 1983."), *report and recommendation adopted*, No. 2:98-CV-2111-LKK, 2013 WL 5946182 (E.D. Cal. Nov. 2013); *Hernandez v. Cate*, 918 F. Supp. 2d 987, 1018 (C.D. Cal. Jan. 2013) ("Plaintiff cannot state a section 1983 claim based solely on [the Defendant's] role in the inmate appeals process."); *Lamon v. Junious*, No. 109CV00484GSAPC, 2009 WL 3248173, at *4 (E.D. Cal. Oct. 2009) ("[T]he involvement of prison personnel in reviewing and issuing decisions on Plaintiff's inmate appeals does not provide a basis for the imposition of liability on them for the conduct of others.").

Accordingly, Defendant Covello's SLR was too far removed to state a claim as to the causal connection between Defendant Covello's conduct and the alleged constitutional deprivation.  Therefore, accepting all the allegations regarding Plaintiff's First Amendment

Free Exercise Claim as to Defendant Covello as true and construing them in the light most favorable to the non-moving party, Plaintiff has failed to state a cognizable claim that is plausible on its face. Accordingly, IT IS THEREFORE RECOMMENDED THAT that this First Amendment claim be DISMISSED as to Defendant Covello.

### 2. Defendant Eshelman

As to Defendant Eshelman, Plaintiff also alleged that it was his duty, as a member of the RRC, for keeping track of transferring inmates' religious diets and warning inmates of any violations regarding their RMA diet before removal. (ECF No. 15 at 1–2.) Plaintiff then alleged that "Defendants' participation in the removal of Plaintiff from the RMA diet without first warning him has hindered his full and safe participation of his religion." (*Id.*) Plaintiff has only made these two conclusory allegations regarding Defendant Eshelman's personal participation in removing him from the RMA diet.

Initially, Defendant Eshelman's involvement with the RRC is insufficient in establishing personal involvement in the alleged constitutional violation. *Wesley*, 333 F. Supp. 2d at 892 ("[A]n individual's 'general responsibility for supervising the operations of a prison is insufficient to establish personal involvement.'"). Further, there is no specific allegation in the FAC that Defendant Eshelman personally participated in removing Plaintiff from his RMA diet, which is not enough to establish Defendant Eshelman's personally involvement in the deprivation of his constitutional rights. *See Barren,* 152 F.3d at 1194 ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant."). Although the Court's order as to the first Motion to Dismiss indicated that Plaintiff needed to plead that each Defendant violated the Constitution through his own individual actions, Plaintiff failed to individualize Defendant Eshelman's personal participation in removing him from the RMA diet. (ECF Nos. 14 at 7–8; 15 at 1–3.) Accordingly, Plaintiff has failed to proffer any facts to state a claim as to Defendant Eshelman's personal involvement in a constitutional deprivation.

Additionally, Plaintiff failed to allege a sufficient causal connection between Defendant Eshelman and the alleged First Amendment violation. *See Jones*, 297 F.3d at 934. Despite the Court's previous order indicating that the causal connection must be individualized as to each individual Defendant whose acts or omissions are alleged to have caused a constitutional deprivation, Plaintiff failed to plead any specific and individualized actions as to Defendant Eshelman. *See Leer*, 844 F.2d at 633 ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."). Plaintiff failed to allege that Defendant Eshelman affirmatively acted, participated in another's affirmative acts, or failed to act when he was legally required to do so, that deprived Plaintiff of his First Amendment right. *See Johnson*, 588 F.2d at 743 ("A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."). The general allegations in the FAC, without a specific causal link between Defendant Eshelman and the removal of Plaintiff from the RMA diet, fails to state a claim for relief.

Accordingly, Plaintiff failed to proffer any individualized facts to state a claim as to the causal connection between Defendant Eshelman and the alleged constitutional deprivation under the First Amendment. Therefore, accepting all the allegations regarding Plaintiff's First Amendment Free Exercise Claim regarding Defendant Eshelman as true and construing them in the light most favorable to the non-moving party, Plaintiff has failed to state a cognizable claim that is plausible on its face. Accordingly, IT IS THEREFORE RECOMMENDED THAT that this First Amendment claim be DISMISSED as to Defendant Eshelman.

///

///

///

19-cv-01999-JAH-BGS

### C. Fourteenth Amendment Due Process Claim[1]

In his FAC, Plaintiff alleged that it was Defendants' duties, as members of the RRC, for keeping track of the religious diets of transferring inmates and warning the inmates of any violations regarding their RMA diet before removal, pursuant to California Department of Corrections and Rehabilitation's Operations Manual ("Department's Operations Manual" or "DOM") § 54080.14 and Title 15 of the California Code of Regulations ("CCR"), § 3054.5.  (ECF No. 15 at 1–2.)  Plaintiff alleged that the Defendants violated the Fourteenth Amendment when they neglected these guidelines.  (*Id.* at 3.)

Section 3054.5 of Title 15 of the California Code of Regulations states:

> Any alleged compliance violation of the Religious Diet Program Agreement shall be reported using CDC Form 128-B, General Chrono, citing CCR, Title 15, [§] 3054. All reports shall be sent to the designated representative of the RRC, who shall consult with the inmate. The RRC shall make the final determination of continuing eligibility, and complete a CDCR Form 3030-C [] , Religious Diet Program Notice of Non-Compliance, which is incorporated by reference. As described on the CDCR Form 3030-C, a first violation of the Religious Diet Program Agreement shall result in a warning issued to the inmate, and a second violation within six months of the first violation may subject the inmate to removal from the program. A copy of the completed CDCR Form 3030-C shall be provided to the inmate.

Further, as to an inmate's non-compliance, § 54080.14 of the Department's Operations Manual states in part:

> Chaplain Responsibilities. [. . .] Upon receiving a completed inmate's "Religious Diet Request" form, the Chaplain, or their designee shall: [. . .] Meet with inmates, giving them the opportunity to respond to allegation(s) of noncompliance with Religious Diet Program.  Utilize the Religious Diet Program Notice of Noncompliance form.

---

[1] Although not labeled as a separate cause of action nor expressly alleged, Plaintiff's Due Process allegation is addressed in the Court's previous order (ECF No. 14) and is embedded within the FAC (ECF No. 15).  Accordingly, the Court will construe Plaintiff's pleadings liberally and proceed to address the Due Process argument as if it was a discrete cause of action listed in the FAC.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Erickson*, 551 U.S. at 94 (pro se complaints "must be held to less stringent standards than formal pleadings drafted by lawyers")).

<u>Monitoring for Religious Diet Program Inmate Compliance</u>. Any staff may report an incident of an alleged inmate Religious Diet Program Agreement compliance violation [. . .] Religious Diet Program Agreement. The incident report must be in writing using a CDC Form 128-B, General Chrono, citing CCR, Title 15, Section 3054.   All written reports shall be sent to the appropriate Chaplain who shall make the final determination of continuing eligibility.

Although Plaintiff tried to frame the issue surrounding his RMA diet as a constitutional violation, Plaintiff's only allegation in his FAC specifically involved whether the Defendants should have followed the procedures listed in DOM § 54080.14 and CCR § 3054.5 following Plaintiff's first violation of his RMA diet.  (*See* ECF Nos. 15; 18.)  Plaintiff argued that the Defendants should have provided notice to Plaintiff regarding his violation and should have continued Plaintiff on his RMA diet.  (ECF Nos. 15 at 2–3; 18 at 3–4.)  Plaintiff claimed that the Defendants violated these regulations by not notify him of his violation of his RMA diet and did not allow him to remain on his RMA diet following his first violation.  (*Id.*)  Plaintiff alleged that the Defendants' "lack of following the guidelines set in place by the CCR, Title 15, section 3054, is a basis for liability in a §1983 lawsuit," and that the Defendants neglecting these regulations effectively denied him Due Process.  (*See* ECF No. 18 at 4.)

Only violations of the U.S. Constitution or federal law are cognizable under 42 U.S.C. § 1983.  *Canell v. Oregon Dep't of Just.*, 811 F. Supp. 546, 550 (D. Or. 1993) (citing *Williams v. Treen,* 671 F.2d 892 (5th Cir.1982), *cert. denied,* 459 U.S. 1126 (1983)).  Violations of state law or state regulations generally do not amount to a constitutional violation in § 1983 actions.  *See*, *e.g.*, *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009) (All § 1983 claims must be premised on a constitutional violation. [. . .] If the government official [. . .] did not violate the claimant's rights under the Constitution, no relief lies within §1983.]"); *Sweaney v. Ada Cnty.*, 119 F.3d 1385, 1391 (9th  Cir. 1997) ("To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [§] 1983 offers no redress.")); *Doe v. Conn. Dept. of Child & Youth Servs.,* 911 F.2d 868, 869 (2d Cir. 1990)

("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim."); *Patterson v. Coughlin*, 761 F.2d 886, 891 (2d Cir. 1985) ("[A] state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983[.]"); *see also* (ECF No. 14 at 8).

Notwithstanding, state regulations can sometimes give rise to liberty interests that are protected by the Fourteenth Amendment's Due Process Clause. *Chappell v. Mandeville*, 706 F.3d 1052, 1064 (9th Cir. 2013) (Graham, J., concurring) (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)). "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). But it does not "protect every change in conditions of confinement having a substantial impact on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 478. While the Ninth Circuit has recognized that Fourteenth Amendment protection can extend to state prison regulations, this determination rests on whether a violation of the regulation imposes "'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,'" and is generally confined to regulations that relate to freedom from restraint. *Id.*

In its previous order, the Court informed the Plaintiff that under the circumstances of this case, Due Process is only violated when there are changes that inflict an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." (ECF No. 14 at 8.) The Court then granted Defendant's Motion to Dismiss as to Plaintiff's Fourteenth Amendment claim, stating that Plaintiff failed to allege that any changes to his diet were a "dramatic departure from the basic conditions" of his confinement that would give rise to a liberty interest. (*Id.* at 8–9.) The Court then granted Plaintiff leave to amend to cure this deficiency. (*Id.* at 10.)

Accepting all allegations of material fact in the FAC as true and construing them in the light most favorable to the non-moving party, Plaintiff has not cured this defect for two

19-cv-01999-JAH-BGS

reasons.  First, Plaintiff cannot prove an essential element of his claim, that a federal constitutional right has been violated, since there is no independent cause of action under § 1983 for violations of CCR § 3045.5 or other similar regulations.  *See*, *e.g.*, *King v. Los Angeles Cnty. Sheriff's Dept.*, 672 F. App'x 701, 702 (9th Cir. 2016) ("Dismissal of King's claims alleging violations of Title 15 of the California Code of Regulations was proper because the cited regulations do not create a private right of action."); *Himes v. Hadjadj*, No. 19CV2216-JAH-MSB, 2020 WL 4582676, at *8 (S.D. Cal. Aug. 2020) ("The Court's review of federal and state precedent allowing Fourteenth Amendment due process claims to proceed on the basis of CCR violations has uncovered no reported decisions finding that an independent cause of action is authorized by violations of CCR Title 15 § 3045.5, or any similar regulations."), *report and recommendation adopted*, No. 19CV2216-JAH-MSB, 2021 WL 843182 (S.D. Cal. Mar. 2021); *Nible v. Fink*, No. 16-CV-02849-BAS-RBM, 2019 WL 2611102, at *4 (S.D. Cal. June 2019) ("[V]iolations of Title 15 of the California Code of Regulations ... do not create a private right of action."), *aff'd*, 828 F. App'x 463 (9th Cir. 2020); *Wallace v. Olson*, No. 3:16-CV-1917-AJB-NLS, 2017 WL 1346825, at *6 (S.D. Cal. Apr. 2017) ("[T]o the extent Plaintiff's FAC and exhibits focus almost exclusively on [Defendants'] alleged failures to properly follow CDCR Title 15 prison regulations governing the processing of his inmate appeals, he has failed to state a claim upon which § 1983 relief can be granted."), *aff'd*, 715 F. App'x 797 (9th Cir. 2018); *Chappell v. Newbarth*, No. 106CV-01378OWW-WMW, 2009 WL 1211372, at *9 (E.D. Cal. May 2009) ("The Court has found no authority to support a finding that there is an implied private right of action under Title 15.").

Second, Plaintiff has not provided any allegations that the violation of a state or prison regulation imposed an atypical and significant hardship in relation to the ordinary incidents of prison life.  *See Sandin*, 515 U.S. at 484.  In his FAC, Plaintiff first alleged that the Defendants, as members of the RRC, should have followed the procedures set forth in DOM § 54080.14 and CCR § 3054.5 following his first religious meal violation.  (ECF No. 15 at 2.)  Plaintiff then made a conclusory allegation that the Defendants' participated

in removing Plaintiff from his RMA diet without warning, which hindered his full and safe participation of his religion.  (*Id.*)  Plaintiff failed to provide any allegations indicating that violating a state or prison regulation resulted in a dramatic departure from the basic conditions of his confinement that would give rise to a liberty interest.  *Sandin*, 515 U.S. at 485.

To the extent Plaintiff alleged that Defendant Covello violated his Fourteenth Amendment Due Process rights during the grievance process, the FAC also failed to state a valid claim for relief.  Inmates do not maintain a constitutional right to an effective grievance or appeal procedure.  *Ramirez*, 334 F.3d at 860.  And Plaintiff's allegation that Defendant Covello's SLR to Plaintiff's grievance should have followed the procedures set forth in DOM § 54080.14 and CCR § 3054.5 following his first religious meal violation does not amount to atypical or significant hardship in relation to the ordinary incidents of prison life that implicate protection under the Fourteenth Amendment's Due Process Clause.  *See Zarate v. Tilton*, No. C 08-3896SI-PR, 2009 WL 311401, at *6 (N.D. Cal. Feb. 2009) ("The failure to grant an inmate's appeal in the prison administrative appeal system does not amount to a due process violation. [. . .] The denial of an inmate appeal is not so severe a change in condition as to implicate the Due Process Clause itself[. . . .] An incorrect decision on an administrative appeal or failure to process the appeal in a particular way therefore did not amount to a violation of his right to due process.")

Accordingly, Plaintiff has failed to establish that any violation of DOM § 54080.14 and CCR § 3054.5 by the Defendants amounted to a constitutional violation.  Therefore, accepting all the allegations regarding Plaintiff's Fourteenth Amendment Due Process claim as true and construing them in the light most favorable to the non-moving party, Plaintiff has failed to state a cognizable claim that is plausible on its face.  Accordingly, IT IS THEREFORE RECOMMENDED THAT that this Fourteenth Amendment Due Process claim be DISMISSED as to both Defendant Covello and Defendant Eshelman.

///

///

### D. Injunctive Relief

Plaintiff requested that the injunctions requested in the initial complaint be rewarded. (ECF No. 15 at 4.)  However, Judge Houston previously dismissed, without leave to amend as futile, Plaintiff's RLUIPA claim which included the same request for injunctive relief. (ECF No. 14 at 9–10.)   Accordingly, IT IS THEREFORE RECOMMENDED THAT Plaintiff's reasserted request for injunctive relief be DISMISSED.

### E. Qualified Immunity

Defendants also move to dismiss on the ground that they are entitled to qualified immunity.  Because the Court has found that Plaintiff has failed to state a claim against them, it need not reach any issues regarding qualified immunity.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."); *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[The better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all.").

## V.   CONCLUSION AND RECOMMENDATION

For the reasons discussed, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) adopting this Report and Recommendation; (2) **GRANTING** Defendants' Motion to Dismiss (ECF No. 16); and (3) **DISMISSING** Plaintiff's FAC.

**IT IS ORDERED** that no later than **September 3, 2021**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objection to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **September 17, 2021**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections may waive the right to raise those objections on appeal of the Court's

order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated:  August 20, 2021

Hon. Bernard G. Skomal
United States Magistrate Judge